

"O"

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re INTERLINK ELECTRONICS, INC., SECURITIES LITIGATION | ) ) ) | CASE NO. SACV 05-8133-AG(SHx) |
| This Document Relates To: | ) ) ) ) | ORDER DENYING DEFENDANTS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT |
| All Actions | ) ) ) ) ) ) | |
| _____ | ) | |

Before the Court is the Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("Motion") filed by Defendants Interlink Electronics, Inc. ("Interlink"), and E. Michael Thoben, III ("Thoben"). Defendant Paul D. Meyer ("Meyer") has joined this Motion. . After considering all arguments submitted by the parties, the Court DENIES the Motion.

## BACKGROUND

Plaintiffs purchased Interlink securities between April 24, 2003 and November 1, 2005 ("the Class Period"). Plaintiffs allege that Interlink, its President and Chief Executive Officer Thoben, and its Executive Vice President and former Chief Financial Officer Meyer, violated securities laws by making false and misleading statements in connection with the sale of

Interlink stock.  For example, Plaintiffs allege that Defendants represented that Interlink used accepted accounting methods, when in fact Defendants were not properly recording revenue or documenting inventory.  Plaintiffs allege that, because of Defendants' false statements and faulty accounting, they purchased their Interlink stock at artificially inflated prices.

After Plaintiffs purchased their stock at allegedly inflated prices, Defendants released two restatements announcing that their previous financial statements had been incorrect, because of improper accounting.  According to Plaintiffs, after the restatements were released, the price of Interlink stock fell drastically.

Plaintiffs bring five claims for relief for: (1) violation of Section 11 of the Securities Act of 1933; (2) violation of Section 12(a)(2) of the Securities Act of 1933; (3) violation of Section 15 of the Securities Act of 1933 against Thoben and Meyer (the "Individual Defendants"); (4) violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5, and (5) violation of Section 20 of the Securities Exchange Act of 1934 against the Individual Defendants.  Defendants here move for the second time to dismiss the claims against them.

**LEGAL STANDARD**

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "Ordinary pleading rules are not meant to impose a great burden upon a plaintiff."  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964 (2007)).  Thus, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show "that the pleader is entitled to relief."  *Bell Atlantic*, 127 S.Ct. at 1965.  Conversely, a complaint should be dismissed for failure to state a claim where the factual allegations do not raise the

"right of relief above the speculative level." *Id.*

The Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Westland Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir. 1993); *see also Enesco Corp v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1988). However, courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

**ANALYSIS**

1.      **PLAINTIFFS' FOURTH CLAIM FOR RELIEF FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 10b-5**

Section 10(b) of the Securities Exchange Act of 1934 ("§ 10(b)") forbids (1) the "use or employ[ment] . . . of any . . . deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations." SEC Rule 10b-5 forbids the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5. To state a claim under Section 10(b) of the Securities Exchange Act, a plaintiff must allege: (1) a material misrepresentation or omission of fact; (2) "scienter," or a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) "loss causation." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Defendants argue that Plaintiffs have failed to adequately plead the second factor, scienter, and the sixth factor, loss causation.

### 1.1    Scienter

Scienter – a wrongful state of mind – requires a showing of fraudulent intent or "deliberate or conscious recklessness." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999). A plaintiff pleading scienter in the context of securities litigation must meet a more stringent pleading requirement than a typical plaintiff in a motion to dismiss context. Under the Private Securities Reform Act of 1995 ("PSLRA"), such a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Supreme Court has construed this language to mean that, to state a claim under § 10(b), an inference of scienter must "be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2504-05 (2007).

Plaintiffs argue that they have adequately pled scienter in their Second Amended Complaint. Plaintiffs point to multiple factors that they argue support an inference that the Individual Defendants made false statements with fraudulent intent, including: (1) allegations of channel stuffing; (2) allegations of "billing and holding;" (3) stock sales; (4) two restatements; (5) false statements about inventory turns; (6) GAAP violations; and (7) the high level positions of the Individual Defendants. The Court now turns to the first factor, channel stuffing, keeping in mind that  "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Id.* at 2511.

Plaintiffs argue that the channel stuffing alleged in the Second Amended Complaint gives rise to an inference of scienter. The term "channel stuffing" "refers to shipping to one's distributors more of one's product than one thinks one can sell." *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. Ill. 2008). Channel surfing is not fraudulent when it is done to encourage one's distributors to sell more. *Id.* But it becomes a form of fraud when it is used "to book revenues on the basis of goods shipped but not really sold because the buyer can return them." *Id.* Goods that are shipped to distributors but that can still be returned are in

1    effect sales on consignment, and cannot be booked as revenue.  *Id.*

2         Plaintiffs' Second Amended Complaint alleges that, at the end of each quarter, Interlink

3    shipped out large shipments of products, and that, after the end of each quarter, shipments almost

4    as large were shipped back to the company for returns.  (Second Amended Complaint ¶ 35.)

5    Plaintiffs' Second Amended Complaint also alleges that Defendants attempted to cover up their

6    channel stuffing by representing to the public that their customers did not have a right to return

7    Defendants' products.  (*See, e.g.*, *id.* ¶ 45.)  Finally, it alleges that the terms and conditions

8    allowing for returns were not provided to Interlink's accounting office.  (*Id.* ¶ 37.  This would

9    mean that the accounting office would not know not to report some shipments as sales, because

10   it would not be aware that those shipments could be returned.  Plaintiffs argue that these

11   allegations give rise to a strong inference of scienter because: (1) the large amount of returns

12   implies that the purpose of the channel stuffing was fraudulent, *see Makor*, 513 F.3d 702, 710

13   ("The huge number of returns of 5500 systems is evidence that the purpose of the stuffing was to

14   conceal the disappointing demand for the product rather than to prod distributors to work harder

15   to attract new customers, and the purpose would have been formed or ratified at the highest level

16   of management."), (2) Defendants' statements that they did not give their customers return rights

17   shows Defendants' intent to hide their channel stuffing scheme, and (3) Defendants' failure to

18   inform the accounting office of the customers' return rights evidences further intent to cover up

19   their fraud.

20        Defendants respond that channel stuffing allegations do "not support a strong inference of

21   scienter," because "there is nothing inherently improper" about it and "there may be any number

22   of legitimate reasons for attempting to achieve sales earlier."  *Greebel v. FTP Software, Inc.*, 194

23   F.3d 185, 202-03 (1st Cir. 1999).  Defendants then argue that the fact that Plaintiffs have alleged

24   channel stuffing over a six-year period makes the allegation incredible:

25            [F]or channel-stuffing to be improper logically it must be a short-lived scheme

26            in which the wrongdoer attempts to capitalize on artificially increased sales

27            *before* the resulting drop in sales.  If channel stuffing occurs over time, the

28            pattern of increased sales toward the end of each quarter and lower sales at the

1                 beginning of each quarter would be quite transparent . . . and thus could not

2                 form the basis of an allegation of fraud."

3 *In re ICN Pharms., Inc. Sec. Litig.* 299 F. Supp. 2d 1055, 1062 (C.D. Cal. 2004).

4         The Court finds that the channel stuffing allegations give rise to two possible inferences.

5 The first, urged by Defendants, is one of negligence or gross negligence, in which the Individual

6 Defendants were unaware that their employees were allowing returns and pushing unnecessary

7 sales at the end of each quarter. The second, which the Court finds at least as plausible as the

8 first, is that the Individual Defendants were aware that Interlink was engaging in channel stuffing

9 to meet financial goals at the end of each quarter and allowing returns at the beginning of the next

10 quarter. This scenario is plausible because the channel stuffing allegedly occurred in large

11 amounts every quarter for six years. It is hard to believe that the Chief Executive Officer and

12 Chief Financial Officer of a company would be unaware of such a practice existing for six years,

13 especially, as Defendants argue, if it would be "quite transparent." Further, it is hard to believe

14 that those individuals would be unaware that their company allowed its customers a right to

15 return its products. Thus, the Court finds that the inference of scienter to be drawn from the

16 alleged facts is at least as strong as the inference of nonfraudulent intent.

17         Plaintiffs argue that many other factors also support an inference of scienter. The Court

18 will not address those factors because it has already found an inference of scienter, and an

19 analysis of those factors does not change its decision. Accordingly, the Motion to Dismiss the

20 Fourth Claim for Relief is not granted on this basis.

21

22         **1.2    Loss Causation**

23

24         Defendants argue that Plaintiffs' Fourth Claim for Relief fails to adequately allege loss

25 causation. Loss causation is "a causal connection between the material misrepresentation and the

26 loss." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341 (2005). Standing alone,

27 allegations that securities were purchased at artificially inflated prices are not sufficient to prove

28 loss causation. *Id*. at 342.

1    Plaintiffs argue that they have adequately alleged loss causation as to four different dates:

2    January 11, March 9, March 31, and November 2, 2005.  Plaintiffs' Second Amended Complaint

3    alleges that on January 11, 2005, Defendants released a press release that announced

4    disappointing earnings, which they attributed to higher than expected expenses in connection

5    with compliance with the Sarbanes-Oxley Act ("SOX").  (Second Amended Complaint ¶ 107.)

6    The report stated that because of "substantial cost related to implementation of procedures

7    required by [SOX], Interlink also now expects to report a net loss of $350,000 to $450,000 for the

8    quarter."  (*Id.*)  The Second Amended Complaint then alleges that after the January 11, 2005

9    announcement, the price of Interlink shares fell.

10    The Court agrees that Plaintiffs have adequately alleged loss causation as to January 11,

11    2005.  To plead loss causation, "the complaint must allege that the practices that the plaintiff

12    contends are fraudulent were revealed to the market and caused the resulting losses."  *Metzler*

13    *Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).  Plaintiffs' Second

14    Amended Complaint does so.  Plaintiffs' Second Amended Complaint alleges that "[t]he January

15    11, 2005 partial disclosures by Interlink signaled to the markets that Interlink had accounting and

16    internal control issues rendering the cost of its SOX compliance higher than anticipated," (*id.* ¶

17    111), and this allegation is not unreasonable.  Accordingly, Plaintiffs have adequately pled loss

18    causation as to at least one date, and the Court need not address the others.

19

20         **1.3     Conclusion**

21

22    Defendants' Motion is DENIED as to Plaintiffs' Fourth Claim for Relief.

23

24    **2.        PLAINTIFFS' FIFTH CLAIM FOR RELIEF FOR VIOLATION OF**

25            **SECTION 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

26

27    Section 20(a) of the Securities Exchange Act of 1934 establishes "controlling person"

28    liability for violations of the Securities Exchange Act of 1934.  To be liable under § 20(a), "the

defendants must be liable under another section of the Exchange Act."  *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 978 (9th Cir. 1999) (citing 15 U.S.C. § 78t(a)).

The only other violation of the Securities Exchange Act of 1934 alleged in the Second Amended Complaint is a violation of § 10(b).  Because the Court has found that Plaintiffs have adequately alleged a primary violation of § 10(b), the Court DENIES the Motion as to Plaintiffs' Fifth Claim for Relief.

3.     **PLAINTIFFS' FIRST AND SECOND CLAIMS FOR RELIEF FOR VIOLATIONS OF SECTION 11 AND 12 OF THE SECURITIES ACT OF 1933**

Defendant argues that Plaintiffs' claims against the Individual Defendants under Sections 11 and 12 of the Securities Act of 1933 should be dismissed because the Court has already decided that they fail to state a claim.  The Court dismissed these claims against the Individual Defendants in its Order ruling on Defendants' first Motion to Dismiss, and Defendants argue that Plaintiffs' Second Amended Complaint does not add anything substantive to these claims.

The Court disagrees.  In their Second Amended Complaint, Plaintiffs have newly alleged that each of the Individual Defendants signed a registration statement that contained a material false statement.  This is enough to state a claim under Sections 11 and 12.  15 U.S.C. §§ 77k, 77l(a)(2); *see also In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) ("The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material . . . . No scienter is required for liability under § 11.") The Motion is DENIED as to Plaintiffs' First and Second Claims for Relief.

1 | **DISPOSITION**

2

3 |          The Motion is DENIED.

4

5 | IT IS SO ORDERED.

6 | DATED: October 6, 2008

7

8 | _____

9 |                              Andrew J. Guilford
  |                      United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28